## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Smallhold, Inc., | Case No. 24-10267 (CTG) |
| Reorganized Debtor. | (Subchapter V) |
| Mountain Meadow Mushroom Farms, Inc., | Adv. Proc. No. 25-50491 (CTG) |
| Plaintiff, | **Related Docket No. 12** |
| v. | |
| Smallhold, Inc., *et al.*, | |
| Defendants. | |
| Smallhold, Inc., | Adv. Proc. No. 25-50393 (CTG) |
| Plaintiff, | **Related Docket No. 15** |
| v. | |
| Mountain Meadow Mushroom Farms, Inc., | |
| Defendant. | |

## <u>CORRECTION</u>

A careful reader pointed out that this Court's July 29, 2025 Memorandum Opinion contained an error. On the second line of page 19, the opinion used the word "estate" when it should have said "debtor." The attached Amended Memorandum Opinion corrects that error. The Court thanks the reader for calling this error to the Court's attention.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Smallhold, Inc., | Case No. 24-10267 (CTG) |
| Reorganized Debtor. | (Subchapter V) |
| Mountain Meadow Mushroom Farms, Inc., | Adv. Proc. No. 25-50491 (CTG) |
| Plaintiff, | **Related Docket No. 12** |
| v. | |
| Smallhold, Inc., *et al.*, | |
| Defendants. | |
| Smallhold, Inc., | Adv. Proc. No. 25-50393 (CTG) |
| Plaintiff, | **Related Docket No. 15** |
| v. | |
| Mountain Meadow Mushroom Farms, Inc., | |
| Defendant. | |

## <u>AMENDED MEMORANDUM OPINION</u>

In an ordinary chapter 11 corporate reorganization case, the effective date of the plan marks the dividing line between the time when the debtor is "in" bankruptcy and the date when it emerges from bankruptcy protection. That date is important for a number of reasons. One of them is that while a company is "in" bankruptcy, its assets are part of the "bankruptcy estate." And any dispute that can have a

"conceivable effect" on that estate falls within the subject-matter jurisdiction of the bankruptcy court.

But as the Third Circuit's decision in *Resorts International* explains, things change upon emergence.[1]  A reorganized debtor is, generally speaking, outside the scope of the bankruptcy court's protection.  It does business with the world subject to the usual rules of non-bankruptcy law.  The scope of the bankruptcy court's subject-matter jurisdiction thus narrows sharply.  The court may, of course, enforce the terms of the confirmed plan.  And it may also, under *Resorts*, address matters that have a "close nexus" to the plan.[2]  But it cannot hear and resolve a matter simply because the dispute has an effect on the bankruptcy estate.  As *Resorts* explains, upon the effective date of a plan, estate property typically revests in the reorganized debtor.  Because there is no longer a bankruptcy estate, no dispute can have a "conceivable effect" on the estate.[3]

In addition to the question about the line separating the time when a debtor is "in" bankruptcy from when it has emerged, the current dispute also raises a question of when a claim for breach of contract "arises" for purposes of bankruptcy law.  The debtor Smallhold entered into a long-term contract to buy mushrooms from Mountain Meadow during the bankruptcy case.[4]  Under the confirmed plan, the reorganized

---

[1] *In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004).

[2] *Id*. at 166-167.

[3] *Id*. at 165.

[4] Debtor Smallhold Inc. is referred to as "Smallhold," "debtor," or "reorganized debtor." Mountain Meadow Mushroom Farms is referred to as "Mountain Meadow."

debtor took on the benefits and burdens of that contract.  Mountain Meadow alleges, in a lawsuit filed in California state court, that after Smallhold emerged from bankruptcy, Smallhold breached the contract by failing to buy mushrooms as the contract had required.[5]  The central issue in the current dispute is whether the breach of contract claim arose "in" the bankruptcy case (when the contract was signed) or after the bankruptcy case (when the alleged breaches occurred).

Smallhold removed the California state court lawsuit to federal court, which transferred it here.  If Mountain Meadow's claim for breach of contract is treated as arising during the bankruptcy this Court would have subject-matter jurisdiction over that claim.  If the claim is viewed as arising *after* the debtor emerged, then this Court would lack subject-matter jurisdiction over the claim and this Court should remand it to state court.

The answer is that the breach of contract claim here arises after confirmation.  And while the fact that this is a case under subchapter V, rather than an ordinary chapter 11 case, raises further complications, those concerns turn out (in light of the terms of the confirmed plan) not to make a difference to the outcome here.  The Court

---

[5] The California state law complaint was filed in the Superior Court for the State of California, County of San Diego, and bears the docket number 24CU026743C.  It is docketed in this Court as an attachment to the Notice of Removal, which is D.I. 1 in the adversary proceeding No. 25-50491 (beginning on p. 17 of 39).  That lawsuit is referred to as the "California Litigation" and the complaint as the "California Complaint."  Materials on the docket of this adversary proceeding are cited as "D.I. __."  Citations to materials filed on the docket in adversary proceeding initiated by the debtor, No. 25-50393, are cited as "Adv. Proc. No. 25-50393, D.I. __."  Citations to materials filed on the docket in the main bankruptcy case are cited as "Main Case D.I. __."

thus lacks subject-matter jurisdiction over this claim and will remand it to the state court.

Mountain Meadow also asserted a claim against Smallhold for fraudulent inducement. That claim arises during the bankruptcy. As a result, that claim may be asserted as an administrative claim under § 503(b) and is thus within the "arising under" jurisdiction. In an ordinary chapter 11 case, as well as a consensual case under subchapter V, such a claim would be discharged at confirmation. The claim here, however, will not be discharged unless and until the debtor successfully completes its plan. That circumstance might well justify the entry of a temporary injunction barring the pursuit of that claim during the period after confirmation when the debtor is seeking to complete its obligations under the plan. Mountain Meadow, however, has represented that it does not seek to pursue this claim. The Court will accordingly retain jurisdiction over that claim on the expectation that Mountain Meadow will voluntarily dismiss it.

In addition, Mountain Meadow also asserted state law claims against various third parties. This Court also lacks subject-matter jurisdiction over those claims. The Court will therefore remand those claims to the California state court.

That leaves Smallhold's adversary proceeding asserting violations of the automatic stay, confirmation order, and plan injunction. Beginning with the automatic stay, in light of the analysis above, Mountain Meadow did not violate the automatic stay by asserting the breach of contract claim in state court. That claim arose after the debtor emerged. And the pursuit of post-emergence claims against a

reorganized debtor cannot implicate the automatic stay. The pursuit of the fraudulent inducement claim raises a more subtle issue. That claim arose during the bankruptcy case and would therefore be an administrative claim and would be subject to the administrative claims bar date. But even so, § 362 does not prevent a creditor from seeking to liquidate an administrative claim outside of bankruptcy court. It is only the enforcement of that claim against estate property that would violate the automatic stay. Because there is no allegation that Mountain Meadow took any action against estate property (which, as discussed above, no longer exists, since all estate property revested in the reorganized debtor on the effective date), the claim for violation of the automatic stay will be dismissed.

Finally, the adversary proceeding also asserts claims for violation of the confirmation order and the plan injunction. Those claims also lack merit and will be dismissed.

## Factual and Procedural Background

Smallhold is a specialty mushroom farming company with operations in New York, Texas, and California. Smallhold filed for bankruptcy, under subchapter V of chapter 11, in February 2024.[6] The plan was confirmed in August 2024 notwithstanding the fact that the debtor's unsecured creditors (class 2) voted to reject

---

[6] D.I. 12 at 3. D.I. 12 is Mountain Meadow's motion for remand. Mountain Meadow has attached Adam Pokornicky's declaration [D.I. 12-1], the terms of the Smallhold-Mountain Meadow contract [*id.*, Ex. A], Mountain Meadow's request for judicial notice in support of remand [D.I. 12-2], the Smallhold plan confirmation order [*id.*, Ex. B], Smallhold's third amended plan [*id.*, Ex. C], the plan supplement [*id.*, Ex. D], the amended plan supplement [*id.*, Ex. E], this Court's memorandum opinion on third-party releases [*id.*, Ex. F], and the amended plan confirmation order [*id.*, Ex. G].

the plan.[7]  The confirmation order provided that the reorganized debtor would devote its projected disposable income over the 5-year plan period toward the payment of unsecured creditors.[8]    Because the plan was confirmed non-consensually under § 1191(b) of the Bankruptcy Code (in that a class of creditors rejected the plan), the debtor did not receive a discharge upon confirmation.  Rather, pursuant to § 1192, the debtor's discharge will only become effective upon the completion of the payments required by the plan.[9]  The confirmation order provided, however, that all property of the estate would vest in the reorganized debtor as of the effective date.[10]  The owner of the prepetition debtor would retain its equity interest and become the owner of the reorganized debtor.[11]    The plan became effective on September 6, 2024.[12]    The administrative expense bar date was October 7, 2024.[13]

Plaintiff, Mountain Meadow, is a mushroom supplier.  Mountain Meadow entered into a contract with the debtor, in the period after the petition was filed but before the plan was confirmed, to supply mushrooms for all of the debtor's west coast

---

[7] Main Case D.I. 245 (tabulation of ballots).

[8] D.I. 12 at 3; Main Case D.I. 265 at 10.  With the consent of the U.S. Trustee and all parties, the Court entered an order that confirmed the plan (thus allowing the debtor to emerge from bankruptcy) while reserving the question of the proposed third-party releases.  The Court thereafter issued an opinion on the question of whether the third-party releases were appropriate.  *See* Main Case D.I. 288.  The parties filed an amended confirmation order reflecting the Court's decision. *See* Main Case D.I. 306.  The amended confirmation order does not change the effective date of the plan or the administrative claims bar date.

[9] Main Case D.I. 265 at 14-15.

[10] *Id.* at 16.

[11] *Id.*

[12] Main Case D.I. 277 at 1.

[13] *Id.*

contracts for six years.[14]  Under the plan, the reorganized debtor has succeeded to the debtor-in-possession's rights and obligations under the contract.[15]

Mountain Meadow alleges that in October 2024, shortly after the plan became effective, the debtor stopped placing orders for the mushrooms it had agreed to purchase on a weekly basis.[16]  In December 2024, Mountain Meadow initiated the California Litigation against a debtor, Monomyth (which owns the debtor), and Chip Dunn (the debtor's CEO) in California state court.[17]  The complaint asserted claims of breaches of the post-petition contract, fraud in the inducement, specific performance, and injunctive relief.[18]

Defendants removed the case to this Court in January 2025 on the ground that this Court has both 28 U.S.C. § 1334(b) "related to" and "arising under" jurisdiction over this action.[19]  Mountain Meadow has moved to remand, arguing that the dispute involves purely state law claims and that this Court lacks subject-matter jurisdiction.[20]

Separately, in March 2025, the reorganized debtor also initiated an adversary proceeding in this Court against Mountain Meadow alleging that the filing of the

---

[14] D.I. 12 at 2-3.

[15] *See* Main Case D.I. 265 at 16.

[16] D.I. 12 at 3; Adv. Proc. No. 25-50393, D.I. 1-2 at 7 of 15.

[17] D.I. 12 at 3. Monomyth, LLC or Monomyth Group (which is the entity's trade name) is referred to as "Monomyth."  The debtor, Monomyth, and Chip Dunn are collectively referred to as the "defendants."

[18] D.I. 12 at 3.

[19] Adv. Proc. No. 25-50393, D.I. 1-3 at 7-8 of 38 (Notice of Removal).

[20] D.I. 12 at 1-2.

state court lawsuit violates the automatic stay.[21]  Mountain Meadow failed to respond to that complaint in a timely fashion, and a default was entered against it.[22]  But when Smallhold sought the entry of a default judgment, Mountain Meadow appeared in the case and opposed the motion.[23]  At the same time, Mountain Meadow moved (1) to dismiss the debtor's complaint alleging violation of the automatic stay, asserting that the complaint violated the 'first-to-file' doctrine, and (2) to set aside the default.  The parties stipulated and agreed to vacate the entry of default and procedurally to consolidate both adversary proceedings.[24]  Mountain Meadow maintains its motion to dismiss the adversary complaint on the merits and for violation of the 'first-to-file' doctrine.[25]

On June 3, 2025, the Court heard argument on both the motion to remand and the separately filed motion to dismiss the adversary complaint filed by the debtor.[26]  During the argument, Mountain Meadow stated that it intended to pursue, in state court, only those claims that arose after the effective date of the plan.  Acknowledging that its claim for fraudulent inducement is likely one that arose before the effective date, it disclaimed any interest in pursuing such a claim.

---

[21] Adv. Proc. No. 25-50393, D.I. 1.

[22] *Id.*, D.I. 10.

[23] *Id.*, D.I. 15.

[24] *Id.*, D.I. 18.

[25] *Id.*

[26] *See* June 3, 2025 Hr'g Tr.

## Jurisdiction

Smallhold's adversary proceeding asserting that Mountain Meadow violated the automatic stay arises under § 362 of the Bankruptcy Code and is thus within the district court's "arising under" jurisdiction provided in 28 U.S.C. § 1334(b).  That jurisdiction was referred to this Court under 28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order of reference.

Subject-matter jurisdiction over the removed lawsuit is disputed.  For the reasons set forth below, the Court concludes that it lacks subject-matter jurisdiction over Mountain Meadow's post-effective date claims and, pursuant to 28 U.S.C. § 1447(c), will remand those claims to California state court.  Mountain Meadow's pre-effective date claim, which Mountain Meadow has disclaimed an interest in pursuing, is within the Court's jurisdiction set out in 11 U.S.C. § 1334(b). The Court will retain jurisdiction over this claim with the expectation that Mountain Meadow will voluntarily dismiss it.  Finally, the Court lacks subject-matter jurisdiction over Mountain Meadow's claims against third parties and, pursuant to 28 U.S.C. § 1447(c), will remand those claims to California state court.

## Analysis

I.   **The Court will remand to state court the claim asserting breach of contract, will retain jurisdiction over the fraudulent inducement claim, and will remand the claims asserted against third parties.**

Defendants removed the underlying action from California state court to this Court under 28 U.S.C. § 1452(a) which provides for removal of "any claim or cause of action…if [the] district court has jurisdiction of such claim or cause of action under

section 1334 of this title."[27]  Section 1452 specifically governs removal and remand in bankruptcy, providing that a claim or cause of action may be remanded "on any equitable ground."[28]  In addition, the Supreme Court has made clear that § 1447, which more broadly governs remand to state court of cases removed to federal court, also applies when cases are removed under the § 1452 bankruptcy removal authority.[29]  Section 1447(c) requires that a case be remanded if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[30]  Reading these provisions together, a court should remand to state court any *claim* (rather than the entire case) that has been removed under § 1452 but that falls outside the bankruptcy jurisdiction.

Smallhold asserts that this Court has both "related to" and "arising under" jurisdiction over the claims in this removed lawsuit.  It characterizes Mountain Meadow's claims as post-petition, pre-confirmation claims and argues they are within this Court's "arising under" jurisdiction (because they, in effect, seek the allowance of administrative claims under § 503 of the Bankruptcy Code).[31]  Mountain Meadow, on the other hand, asserts that all of its claims in the removed lawsuit arise from

---

[27] 28 U.S.C. § 1452(a).

[28] *Id.* § 1452(b).

[29] The Supreme Court, in *Things Remembered*, explained that § 1452 was not intended to be the exclusive provision governing removal and remand in bankruptcy, but rather a supplement to the rules governing removal and remand under § 1447.  Though § 1452 is applied on a claim-by-claim basis while § 1447 governs the entire case, sections 1452 and 1447 co-exist, so claims removed under § 1452(a) can be remanded under § 1447(c) on a claim-by-claim basis.  *See Things Remembered v. Petrarca*, 516 U.S. 124, 128-129 (1995).

[30] 28 U.S.C. § 1447(c).

[31] D.I. 25 at 12-13.

post-effective date conduct and that the claims arise under state law. Accordingly, Mountain Meadow argues that there would only be subject-matter jurisdiction over the action if there were a "close nexus" between the removed action and the confirmed plan. Relying on *Resorts*, Mountain Meadow argues that Smallhold has failed to show the requisite close nexus necessary to establish that this Court has "related to" jurisdiction over the removed lawsuit.[32]

In determining whether the action is within the Court's subject-matter jurisdiction, the Court considers the motion for remand and attached affidavits, the initial complaint, state-court record at the time the notice of removal was filed, and the notice of removal.[33] The removing party bears the burden of proving removal was proper.[34] Viewing the removed action on a claim-by-claim basis, the Court concludes that it (a) lacks jurisdiction over the breach of contract claim because it arises after the effective date, and so will remand it; (b) has jurisdiction over the fraudulent inducement claim, which it will retain; and (c) lacks jurisdiction over the claims against the third parties, and so will remand them.

---

[32] D.I. 12 at 9.

[33] A motion for remand and a 12(b)(1) challenge to subject matter jurisdiction share identical procedural posture so they can be evaluated under the same analytical framework. *Papp v. Fore-Kast Sales Co., Inc.,* 842 F.3d 805, 811 (3d Cir. 2016). *Cf.* Wright & Miller, 14C *Fed. Prac. and Proc.* § 3739 (4th ed. 2025) and Wright & Miller, 5B *Fed. Prac. and Proc.* § 1350 (4th ed. 2025).

[34] Wright & Miller, 14C *Fed. Prac. and Proc.* § 3739 (4th ed. 2025) ("Whether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state-court record at the time the notice of removal was filed. The district court, sitting without a jury, decides all issues of fact raised by the plaintiff's motion to remand, and the removing party bears the burden of proof as to all elements of the removal's propriety.").

A. **The Court lacks subject-matter jurisdiction over the breach of contract claim.**

1. **The Court would have subject-matter jurisdiction over a claim that arises "during" the bankruptcy case; not one that arises after the effective date.**

When considering, in chapter 11, the scope of a bankruptcy court's post-confirmation "related to" jurisdiction, the "close nexus" test set forth in *Resorts* is controlling. For claims arising before confirmation, *Pacor* explains that a bankruptcy court would have subject-matter jurisdiction over any claim that could have a "conceivable effect" on the bankruptcy estate.[35] *Resorts*, however, makes clear that this jurisdiction narrows sharply once a plan of reorganization is confirmed and a debtor emerges from bankruptcy.[36]

In *Resorts*, a post-confirmation trust had filed suit against the debtor's accountants, bringing claims for malpractice and breach of contract in connection with the accounting firm's post-effective date conduct.[37] The Third Circuit explained that the bankruptcy court lacked subject-matter jurisdiction over that claim. There is no traditional "related to" jurisdiction after plan confirmation, the Third Circuit explained, because the bankruptcy estate terminates upon confirmation of the plan.[38] Under § 1141(b), unless the plan says otherwise, property of the estate vests in the "debtor," which at that point is a post-confirmation entity.[39] As the Third Circuit put

---

[35] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

[36] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 155 (3d Cir. 2004).

[37] *Id.*

[38] *Id.* at 165.

[39] 11 U.S.C. § 1141(b); *In re Resorts Int'l, Inc.,* 372 F.3d at 165.

it, the court's post-confirmation jurisdiction extends only to matters having a "close nexus" to the confirmed plan. These are matters that "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan" or implicate the integrity of the bankruptcy process.[40]

The rationale that underlies the Third Circuit's *Resort's* decision is that a company that emerges from bankruptcy must go about its business without the protections associated with being a debtor in bankruptcy. Unlike a debtor in possession, the reorganized debtor is subject to the same treatment and rules that govern other market participants.[41] Breaches of contract and other disputes arising out of a reorganized debtor's post-effective date conduct should be resolved outside of bankruptcy, just as they were pre-petition.

The Seventh Circuit made this same point in *Pettibone*, a case that involved a tort claim rather than one for breach of contract, but whose basic analysis is fully applicable here.

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law.[42]

---

[40] *In re Resorts Int'l, Inc.*, 372 F.3d at 167.

[41] 1 *Collier on Bankruptcy* ¶ 3.02 N. 129.

[42] *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (Easterbrook, J.) (citations omitted).

Accordingly, the question whether the Court has subject-matter jurisdiction over the breach of contract claim turns on when that claim "arises." While the Court would have jurisdiction over a claim arising during the bankruptcy case, it would lack subject-matter jurisdiction over a claim arising after a plan becomes effective.

> **2.    When a debtor enters into a contract during the bankruptcy under which both parties will have material performance obligations after the effective date, a claim for breach of a post-effective date obligation arises after the effective date.**

Applying that principle, Mountain Meadow's breach of contract claim is outside the scope of this Court's jurisdiction. Mountain Meadow asserts that in October 2024, the debtor stopped placing purchase orders.[43] Such a claim is a post-confirmation claim against the reorganized debtor, and therefore outside the narrow post-confirmation subject-matter jurisdiction provided in *Resorts*.

In this context, the question of when a claim arises is an important part of the analysis of subject-matter jurisdiction. Bankruptcy courts may resolve disputes over claims that arise before the bankruptcy case as part of the claims allowance process and such claims allowance disputes fall within the court's "arising under" jurisdiction because they arise under §§ 501 and 502 of the Bankruptcy Code. Claims that arise during the bankruptcy case are similarly within the court's subject-matter jurisdiction as such claims arise under § 503 as administrative claims. But claims that arise after the effective date of a chapter 11 plan run only against the

---

[43] California Complaint, at 23, 25-26 of 39.

reorganized debtor and fall outside of the bankruptcy court's jurisdiction (as *Resorts* and *Pettibone* explain).

The principal basis for the argument that this Court has jurisdiction over the debtor's claim for breach of contract arises out of the fact that the contract itself was entered into during the bankruptcy case. And there is indeed language in the Third Circuit's decision in *Mallinckrodt* suggesting that a contract claim arises when the parties enter into the contract.[44]

*Mallinckrodt* involved a prepetition license agreement under which Sanofi sold its rights in a drug to the debtor in exchange for a cash payment plus a perpetual royalty. The Third Circuit held that Sanofi's claim to the royalties was a prepetition claim (and thus was discharged in the bankruptcy case). And the court there did note that "most contract claims arise when the parties sign the contract."[45] But the *Mallinckrodt* court emphasized that the contract at issue there provided for an outright sale of the drug, rather than being an executory contract.[46]

The Third Circuit's emphasis on the contract's non-executory nature strongly implies that breach of contract claims arising out of contracts that impose material future-arising performance obligations on both contracting parties would be an exception to the principle that contract claims arise when the parties sign the contract. Where such a contract is entered into *before* the bankruptcy and is

---

[44] *In re Mallinckrodt PLC*, 99 F.4th 617 (3d Cir. 2024).

[45] *Id.* at 621.

[46] *See also In re Essar Steel Minnesota, LLC*, 652 B.R. 709, 719 (Bankr. D. Del. 2023) ("a contract-based claim arises at the time the parties enter into the contractual agreement").

executory as of the petition date, there is an established body of law telling us when such a claim for breach arises.[47]   But the law is much less well developed on the question presented here – when a breach of contract claim arises from a contract that is entered into *during* the bankruptcy case but is executory (not in the sense that § 365 applies to it, but rather in the sense that both parties have future arising material performance obligations) as of the effective date of the plan.   Neither the parties nor the Court has identified caselaw addressed to that specific situation.   It follows, however, from the reasoning of *Mallinckrodt* and basic bankruptcy principles that when the parties enter into such an agreement during the bankruptcy case (such as a long-term lease, or a supply contract like the one at issue here), a claim for breach of a performance obligation under that contract that was to be performed *after* the effective date runs only against the reorganized debtor.   A claim for a post-effective date breach is *not* a claim that arises during the bankruptcy case and cannot be an administrative claim (in which case it would be subject to the administrative claims

---

[47] When an executory contract is rejected in bankruptcy, the rejection constitutes a breach and is treated as a prepetition claim. *See* 11 U.S.C. § 365(g)(1) ("the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease … if such contract or lease has not been assumed under this section or under a plan ... immediately before the date of the filing of the petition").   Where the contract is assumed, any claim for breach of that contract that occurs during the bankruptcy case is treated as an administrative claim.   *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531-532 (1984) ("Should the debtor-in-possession elect to assume the executory contract… the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citations omitted).

bar date and the bankruptcy discharge) simply because the parties signed the contract during the bankruptcy case.[48]

Indeed, during argument, counsel for the debtor (sensibly) acknowledged as much.  The Court asked:

> THE COURT: When you have a long-term contract that is entered into during the bankruptcy case that the reorganized debtor takes on under the plan, do you agree that … at least as to obligations that arise after the effective date, the reorganized debtor is responsible for those?
>
> MR. PARROTT: Yes.
>
> THE COURT: And for obligations that arise before the effective date, you think those are administrative.
>
> MR. PARROTT: Yes.[49]

For that reason, Mountain Meadow's claim that Smallhold failed to order mushrooms as required by the supply contract is a claim that runs against reorganized Smallhold.  It is not an administrative claim that needs to be asserted against the bankruptcy estate.  The claim has no effect on the bankruptcy estate and is outside this Court's subject-matter jurisdiction.  The claim was properly asserted in California state court and will be remanded to that court.[50]

---

[48] *See In re Essar Steel Minnesota, LLC v. B. Riley*, 47 F.4th 193, 200 (3d Cir. 2022) (bankruptcy court had subject-matter jurisdiction to determine whether fee owed to investment banker for services provided under agreement entered before the effective date of the plan were subject to the discharge).

[49] June 3, 2025 Hr'g Tr. 61.

[50] Perhaps a case could be made that the breach of an obligation that the reorganized debtor took on under the plan is a breach of the plan itself, and thus a basis for the counterparty to seek relief under 11 U.S.C. § 1112(b)(2)(N).  No party, however, has advanced such an argument here, and the Court accordingly will not address it.

**3.    While the unusual structure of the "estate" in a case under subchapter V that is confirmed over an objecting class may raise other issues, those issues are obviated by the language of the confirmed plan.**

It bears note that a further potential wrinkle might have been introduced by the fact that this subchapter V case was confirmed under § 1191(b), meaning that it was confirmed despite the fact that a class of impaired creditors voted against confirmation.  In such a case, § 1192 provides that a debtor does not receive a discharge upon confirmation.  Rather, the discharge is granted no earlier than "after completion by the debtor of all payments due within the first 3 years of the plan."[51] In addition, in cases that are confirmed non-consensually, § 1186 provides that property of the estate includes property "that the debtor acquires after the date of the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of this title, whichever occurs first."[52]

The debtor relies on these provisions and on a decision of the U.S. Bankruptcy Court for the Western District of North Carolina in *In re Chesney* to argue that related-to jurisdiction exists even after confirmation in these circumstances.[53]  This line of argument mirrors the longstanding debate about the nature of the chapter 13 estate, where § 1306(a) (like § 1186) contemplates the possibility that property might come into the bankruptcy estate even after a plan is confirmed.  At the same time, however, subchapter V and chapter 13 both have provisions (§§ 1141(b) and 1327(b),

---

[51] 11 U.S.C. § 1192.

[52] 11 U.S.C. § 1186(a)(1).

[53] D.I. 70 at 11-13; *In re Chesney*, 2023 WL 8855242 (Bankr. W.D.N.C. Dec. 21, 2023).

respectively) under which property of the estate is presumptively re-vested in the debtor upon confirmation. Accordingly, there does not appear to be any reason why the question whether the bankruptcy estate continues to exist after confirmation of a non-consensual case under subchapter V should be any different from the question that regularly arises in chapter 13 cases.

In the chapter 13 context, the Seventh Circuit explained, in *Steenes*, how these seemingly conflicting statutory provisions may be reconciled.[54] Consistent with its *Pettibone* decision, in the period before a plan is confirmed, the bankruptcy estate is broadly defined and includes post-petition income. But confirmation of a plan marks the debtor's emergence from bankruptcy. Accordingly, while § 1327(b) "gives bankruptcy judges discretion to hold assets in the estate in particular cases … the exercise of this discretion—like the exercise of all judicial discretion—requires a good reason."[55] For example, if a debtor has an illiquid asset that needs to be liquidated over time in order to permit the debtor to meet its plan obligations, that asset may be kept in the bankruptcy estate and thus be protected (under the automatic stay, which under § 362(c)(1) protects property of the estate so long as it remains in the bankruptcy estate) from post-confirmation creditors during the period when the debtor is performing its plan obligations. But absent such a reason, the default provision of § 1327(b) should control, and property shall re-vest on confirmation.[56]

---

[54] *In re Steenes*, 918 F.3d 554 (7th Cir. 2019).

[55] *Id.* at 557.

[56] *Id.*

In fairness, other courts have reconciled the statutory provisions differently, and there are jurisdictions in which the usual practice in chapter 13 is for the bankruptcy estate to continue to protect the debtor's assets throughout the period when the debtor is performing the obligations under the plan.[57]  The practice in this jurisdiction however, in the chapter 13 context, is to follow the approach that the Seventh Circuit described in *Steenes*.[58]

The debtor's argument from *Chesney* adopts the other side of this divide.  The court there stated that property that might be obtained by the debtor after confirmation "will be drawn into the bankruptcy estate under Section 1186(a)."[59]  If that is what the confirmed plan in *Chesney* in fact said, *Chesney* would simply be one of the cases that rejects the approach set out in *Steenes* and reflected in this jurisdiction's form chapter 13 plan.  But the *Chesney* decision never makes mention of § 1141(b)'s re-vesting provision.  And the confirmation order in the *Chesney* case itself provides that the debtor's property re-vests on confirmation – a fact that the

---

[57] *See In re Aneiro,* 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987) ("confirmation of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate … [instead, the] relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case.").  The different views of the life of the chapter 13 bankruptcy estate are well described by Professor Seymour in Jonathan M. Seymour, *The Limited Lifespan of the Bankruptcy Estate: Managing Consumer and Small Business Reorganizations*, 37 EMORY BANKR. DEV. J. 1 (2020).

[58] This district's form chapter 13 plan provides for revesting on confirmation.  *See* www.deb.uscourts.gov/sites/deb/files/forms/Chapter%2013%20Plan%20Form.pdf.    (stating that "[t]itle to Debtor's property shall revest in the Debtor on confirmation of the Plan, except for undistributed plan payments held by the Trustee)".

[59] *Chesney*, 2023 WL 8855242, at *5.

opinion fails even to mention.[60]  This Court accordingly finds the debtor's reliance on that case to be unpersuasive.

In any event, the confirmation order in this case makes clear that upon the effective date, pursuant to § 1141, all property of the estate vested in the reorganized debtor.[61]  The order further provides that to the extent of any conflict, the confirmation order shall govern over any inconsistent provision of the plan.[62]  The terms of the order are thus controlling.  Accordingly, § 1186 does little to advance the debtor's position.  At most, that provision may give rise to an argument that that a plan *may* defer revesting until after the debtor completes its plan obligations.  But the confirmation order here says otherwise, which is effectively the end of that matter.

### B.    The claim for fraudulent inducement is within this Court's jurisdiction, which the Court will retain.

Unlike the claim for breach of contract, Mountain Meadow's tort claim for fraudulent inducement arises out of alleged acts of the debtor during the bankruptcy case.  The complaint alleges that the debtor (as well as the third parties) induced Mountain Meadow into entering this supply contract by misrepresenting the debtor's ability to fulfill purchasing and payment obligations.[63]  The claim against the debtor,

---

[60] *See In re Chesney*, Bankr. W.D.N.C. No. 22-40109, Order Confirming Reorganization Plan, D.I. 62 (Nov. 30, 2022) (incorporating the plan, including Article 9.1 which provides for the re-vesting of assets in the reorganized debtor, by reference).

[61] Main Case D.I. 265 ¶ 19.

[62] *Id.* ¶ 25.

[63] California Complaint, at 24 of 39.

if valid, would be entitled to administrative priority in the bankruptcy case.[64]   For that reason, the claim would have an effect on the bankruptcy estate and, under *Pacor*, is therefore within this Court's subject-matter jurisdiction.   And while the merits of that claim are not now before this Court, it bears note that the debtor insists that this claim would be precluded by the administrative claims bar date, an argument that may well have merit.[65]

During the June 3 hearing, Mountain Meadow represented that it would not pursue claims in state court for the debtor's acts or omissions that occurred before the effective date, a representation that would seem to moot any dispute over the merits of that claim.   As a practical matter, because the claim is within this Court's subject-matter jurisdiction, this Court believes it appropriate to facilitate the agreed resolution of that claim by retaining its jurisdiction over it.   Mountain Meadow has represented that it intends to dismiss that claim, and it may do so following the entry of an order giving effect to the conclusions set forth in this Memorandum Opinion.

### C.    The claims against third parties are outside of this Court's jurisdiction.

Mountain Meadow also named Smallhold's parent company, Monomyth, and the founder of Monomyth, Chip Dunn, as defendants in the California Litigation.   The defendants argue that Mountain Meadow's claims against non-debtor third parties Chip Dunn and Monomyth fall within this Court's "arising under" jurisdiction

---

[64] *See Reading Co. v. Brown*, 391 U.S. 471 (1968).

[65] *See generally Westinghouse Electric*, 11 F.4th at 232-233 (addressing the role of administrative claim bar dates).

because these claims implicate § 6.12 of the plan.[66]  Section 6.12 of the plan imposes third-party releases on Class 1 and Class 2 creditors who voted to accept or reject the plan but did not affirmatively opt out of granting the third-party releases.[67]  The defendants assert that Mountain Meadow's claims implicate "arising under" jurisdiction because they require the Court to interpret and enforce the terms and provisions of the plan and confirmation order.[68]

That is incorrect.  The confirmation order does enjoin certain parties from bringing claims against third parties, and the defendants are free to raise this as an affirmative defense.  But that does not mean that Mountain Meadow's claims arise under the plan.  Under the well-pleaded complaint rule, a claim arises under federal law only if the federal question appears on the face of the plaintiff's properly pleaded complaint.[69]  Mountain Meadow has pled pure California state contract law claims for relief against the non-debtor third parties.  This Court thus lacks subject-matter jurisdiction over the third-party claims.  They will accordingly be remanded back to California state court.

## II.    The debtor's complaint fails to state claims for violation of the automatic stay and plan injunction and exculpation provisions.

Shortly after the state lawsuit was removed to this Court, the debtor filed a separate but related adversary complaint against Mountain Meadow.  The debtor

---

[66] D.I. 25 at 12.

[67] Main Case D.I. 250 at 26.

[68] D.I. 25 at 10.

[69] *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Bracken v. Matgouranis*, 296 F.3d 160 (3d Cir. 2002).

alleges that Mountain Meadow's state lawsuit violates the automatic stay and the § 6.12 plan injunction.[70]  It seeks declaratory relief, actual and punitive damages, and injunctive relief enjoining Mountain Meadow from continuing to prosecute the removed state lawsuit.[71]  Mountain Meadow has moved to dismiss the debtor's motion for violation of the automatic stay based on the 'first-to-file' doctrine and for failure to state a claim for relief.[72]

The Court is not inclined to dismiss the action based on the 'first-to-file' doctrine.  To be sure, the debtor could have invoked the automatic stay violation as a defense to the California Litigation.  But where the automatic stay is violated by the filing of a lawsuit outside of bankruptcy court, it is customary for the debtor or trustee to seek to enforce the automatic stay by bringing an action in bankruptcy court to enforce the automatic stay.  In light of the centrality of the automatic stay to a bankruptcy proceeding, the Court does not believe that the judicially created 'first-to-file' doctrine, which generally is intended to discourage forum shopping when substantively identical lawsuits are brought by the parties in competing fora, ought to operate to prevent a debtor or trustee from responding to a lawsuit that is in violation of the stay by seeking to enforce the automatic stay by bringing suit in the bankruptcy court.[73]

---

[70] Adv. Proc. No. 25-50393, D.I. 1 at 1.

[71] *Id.*

[72] Adv. Proc. No. 25-50393, D.I. 15.

[73] *See Honeywell Int'l, Inc. v. International Union*, 502 F.App'x 201, 205-206 (3d Cir. 2012) (explaining that the 'first-to-file' doctrine aims to preserve federal comity and intends to

The Court will, however, dismiss Smallhold's automatic stay claim for failure to state a claim.[74] While the automatic stay is broad, it is not all encompassing. It prohibits actions or other efforts to collect on prepetition debt and prohibits creditors from engaging in any acts to obtain or exercise control over estate property.[75] But the automatic stay does not prohibit a creditor from filing suit outside of bankruptcy to liquidate a post-petition claim.[76] To be sure, so long as the automatic stay protecting estate property is in effect, the stay will prevent the creditor from enforcing the claim against estate property.[77] But nothing in § 362 prevents a creditor that asserts a post-petition claim from seeking to liquidate that claim outside of the bankruptcy court.

Mountain Meadow therefore did not violate the automatic stay when it sought relief in California state court for its fraudulent inducement claim, which arose during the bankruptcy, against the reorganized debtor. It *could* have asserted that claim as an administrative claim in this Court, but it was not *required* to do so. Only if Mountain Meadow had obtained judgment in state court on that claim, and tried to

---

promote judicial efficiency); 1 *Moore's Federal Practice – Civil* § 3.02 (2025) (collecting cases explaining the same).

[74] During the June 3, 2025 hearing, Smallhold argued that Mountain Meadow first asserted that Smallhold's automatic stay claim should be dismissed on the merits in its reply brief. The Court accordingly granted the parties additional time to file supplemental briefing on the issue. June 3, 2025 Hr'g Tr. at 52, 74. The Court appreciates the supplemental submissions.

[75] 11 U.S.C. § 362(a)(1), (3).

[76] *Bellini Imports, Ltd. v. Mason and Dixon Lines, Inc.*, 944 F.2d 199, 201-202 (4th Cir. 1991) (collecting cases); *Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.,* 33 B.R. 996, 999-1000 (N.D. Ga. 1983).

[77] *Bellini Imports*, 944 F.2d at 202.

execute or collect on that judgment, would its actions have violated the stay. Mountain Meadow's motion to dismiss the debtor's complaint alleging a violation of the automatic stay is therefore granted as to this claim.[78]

Mountain Meadow's post-effective date state court claims also do not violate the automatic stay because they are not claims for prepetition debt or actions to collect property of the estate. The bankruptcy estate terminated on the effective date and all property of the estate vested in the reorganized debtor. Mountain Meadow brought these claims against the reorganized debtor on account of the reorganized debtor's alleged post-effective date conduct. Its motion to dismiss the debtor's complaint alleging a violation of the automatic stay is granted as to these post-effective date claims.

Nor is there merit to the debtor's assertion that Mountain Meadow's claims violate article 6.11 exculpation and article 6.12 third-party injunction provisions of

---

[78] Smallhold argues that the lawsuit violated 11 U.S.C. § 362(a)(3) by exercising control over property of the estate, making the same assertion rejected above about the existence of a bankruptcy estate following confirmation of a plan. As set forth above, see Part I.A.3, that position cannot be squared with the language of the confirmation order in this case, which provides for revesting of estate property as of the effective date of the plan.

It bears note that the combination of the delayed discharge in non-consensual chapter subchapter V cases, 11 U.S.C. § 1192, combined with the fact that the automatic stay protecting estate property terminates when the property revests, *see* 11 U.S.C. § 362(c)(1), create something of a "hole" in the statute regarding claims that are to be paid over the life of a plan. Without a discharge or the protection of the automatic stay, nothing in the Bankruptcy Code by its terms prevents a creditor whose claim will be paid (in whole or in part) over the life of the plan from suing and collecting on that claim outside of bankruptcy court. That said, this Court sees no reason why a bankruptcy court could not enter a preliminary injunction that temporarily bars the assertion of such a claim while a debtor was performing under its plan obligations. *See generally In re Parlement Technologies, Inc.*, 661 B.R. 722 (Bankr. D. Del. 2024).

the plan.[79]   The confirmation order provides that the release, exculpation, and injunction provisions only apply as to "(i) the Class 1 creditor who voted to accept the Plan and (ii) the Class 2 creditors who (a) voted to accept or (b) rejected the Plan but did not affirmatively mark the box on the ballot to opt out of granting the releases provided under the Plan."[80]   Because Mountain Meadow, a Class 2 creditor, did not vote on the plan, it is not bound by the exculpation and injunction provisions.[81]

During the June 3 hearing, the Court expressed some surprise that the plan's exculpation provision applied only to those creditors who affirmatively consented to it.  The debtor responded by noting that only the plan's third-party release provision was intended to be limited to consenting creditors, not the exculpation provision.[82] The debtor has accordingly moved to modify the confirmation order to correct this mistake.[83]

Mistake or not, the Court does not believe it appropriate to permit any modification to retroactively bar an action by Mountain Meadow that was consistent with the terms of the plan at the time Mountain Meadow asserted the claim.  That said, the parties are directed to meet and confer with respect to a revised form of confirmation order that would correct the ostensible error in the form of confirmation order submitted by the debtor and entered by the Court, but that contains

---

[79] D.I. 55 at 4-5.

[80] Main Case D.I. 306 ¶ O.

[81] *See* Main Case D.I. 288 at 13.

[82] D.I 70 at 6.

[83] Main Case D.I. 318.

appropriate language preserving Mountain Meadow's rights to pursue any action it may have asserted in reliance on the existing form of confirmation order.

## Conclusion

For the foregoing reasons, the Court will remand to the California state court the action that Smallhold removed to federal court, *except* for Mountain Meadow's claim for fraudulent inducement, over which the Court will retain jurisdiction, in the expectation that Mountain Meadow will voluntarily dismiss that claim, as it has represented. The Court will grant Mountain Meadow's motion to dismiss the debtor's adversary proceeding under Rule 12(b)(6) for failure to state a claim for which relief may be granted.

The parties are directed to settle an appropriate order.

Dated: August 18, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE